Our final case of the day is Stowe v. Van Rybroek. Ms. Marion. May it please the court, I'm attorney Colleen Marion on behalf of Graham Stowe. In Fausto v. Louisiana, the United States Supreme Court handed down a clear and simple holding that for 30 years, Wisconsin has simply refused to follow. In Fausto, the Supreme Court held that a state can only confine an NGI equity in a mental institution for as long as they are both currently mentally ill and currently dangerous and no longer. In Wisconsin, when an individual in a mental institution files a petition for conditional release, the sole consideration at the release hearing is that person's risk. There's no requirement under the statute that the circuit court make any finding of the person's continuing mental illness and case law has repeatedly affirmed and re- Counsel, I think we have a particular need in this case to consider the standard of review. The district court thought that because of procedural reasons, there was nothing left in this case except a facial challenge to the terms of the statute. Is that your understanding? Yes, that's my understanding, your honor. Well, the Supreme Court last month, actually July one, went out of its way to emphasize that outside the scope of the First Amendment, it is essentially impossible to win a facial challenge to a statute. The claim has to be made as applied. I mean, that's Moody, but Moody against Net Choice relied on a number of other cases. So my question for you is, if you accept the conclusion that there is nothing here but a facial challenge, how can you proceed? Thank you, your honor. The statute of Wisconsin is always unconstitutional because it never requires the trial court to do what it's required. I think what you mean is, if this statute is facially unconstitutional, every civil detainee in Wisconsin must be released right now. Is that what you're arguing? No, I would be arguing that every NGI acquittee who's eligible to petition for conditional release and has a right to at that conditional release hearing, which they're going to have regardless, that there be an evidentiary basis and a circuit court finding that they're currently mentally ill. And I would point out that- That sounds like an as applied argument about how particular cases should be handled. If the statute as a whole is simply invalid root and branch, it's not just your client that wins, or it's not just more hearings. The statute is gone, right? That's the difference between a facial challenge and an as applied challenge. That's why I think it's particularly important that we get down whether there is anything other than a facial challenge here. Yes, I understand. I would really focus or point to the fact that Fauscia was a facial challenge, that Hendricks and Crane, which came after on sexually violent persons cases, those were facial challenges as well. I'm not worried about cases, other cases decided long before the Supreme Court established its current standards. I'm interested in two things. The first, you seem to agree with the district court that for procedural reasons, your as applied challenge has not been preserved for decision. And second, if it's a facial challenge, can it meet the Supreme Court's current criteria for facial challenges? I think we're in agreement on the first, and I'm asking you to address the second. You can't address the second by pointing to what Fauscia said 40 years ago. I'm asking about the Supreme Court's current criteria. I may be off base on this, but when I really think about the fact that I'm here on a habeas, and we're talking about my client, Graham Stowe, and what occurred in his state court decision, that's what I'm focusing on. That sounds like an as applied challenge, but the district court said that no as applied challenge has been preserved. And I didn't understand your brief to contest that. That's why I started out this way. Sure. Are you contesting the district court's holding that no as applied challenge has been preserved? I guess what I'm contesting is that that's specifically what we're asking the court to do. I'm not asking the court to evaluate. When you start talking about the facts of this case, you're making an as applied challenge. How has an as applied challenge been preserved? How has it been presented to the state courts? I'm not asking this court to strike down a Wisconsin statute. I'm asking the court to invest. That's what a facial challenge is. I'm not sure you're drawing the distinction the way the Supreme Court or the district court did between facial and as applied challenges. I think that's the centerpiece. We need to get this done correctly to see what is left on the table. Right. At the end of the day, the statute is basically unconstitutional because every single time it is applied, it has to be applied unconstitutionally. There's no set of circumstances in which it can be applied constitutionally because it never requires what Fousha says it requires. Then there has to be an immediate release of all such civil detainees in Wisconsin because the statute is just gone. But when I put that to you, you said, no, no, no, no, no. Here's what we can do differently. And which made it sound like an as applied challenge. I understand. You see my problem, I hope. I do see your problem. I understand. And it's your problem too. It is my problem. I think where I'm focusing, I understand if I'm just not being responsive to your honor's question, is that what a person in Wisconsin is entitled to is a fair proceeding where an appropriate and lawful substantive standard is applied. So nobody is opening the doors to Mendota and saying everyone has to go. The point is that- If the statute is invalid on its face, that's exactly the consequence. They all have to be released right now. They all need to have a hearing where there's evidence. No, we are back in the world of as applied. Okay. I did want to- I just want to be sure I understand you. I have not heard from you an argument that the district court is wrong in holding that no as applied challenge was preserved in the state courts. Are you contesting that? I'm not contesting that. And certainly- That may be the critical thing in this case. I understand. I wanted to address the district court had undertaken a statutory construction of Wisconsin law that no Wisconsin court agrees with. And so my understanding- Before you do that, I want to go back to your point on voucher. How is your argument clearly established given Justice O'Connor's concurrence here? She provided the fifth and deciding vote. And she specifically said that she was only addressing the specific statutory scheme before it, the Louisiana statute, which is different than Wisconsin. And she did not understand the court to hold that a state may never confine dangerous insanity equities after they regained their mental health. And she even went on to say something which is completely at odds with your argument, that the nature and duration of detention were tailored to reflect pressing public safety concerns relating to an equities continuing dangerousness, suggesting that it would be okay to keep somebody in some circumstances if they're just deemed dangerous. That was the deciding vote for voucher. So it seems to me the four others and Justice O'Connor disagree on this. And how could we say it's an unreasonable application in light of that? Justice O'Connor stated on page 88, I think it clear that equities could not be confined as mental patients absent some medical justification for doing so. In such a case, the necessary connection between the nature and purposes of confinement would be absent. Holding a non-mentally ill person in a mental institution, there's no medical justification for that. I think Justice O'Connor's concurrence is clear on that. I'd like to reserve the rest of the time for rebuttal. Thank you. Ms. Marianne, I took up a lot of your time. I'll give you two minutes for rebuttal. Ms. Comfort. Good morning, your honors. May it please the court. Your honors, it has always been the state's position that what Mr. Stowe has done in this case is attempt to conflate an as-applied challenge with a facial challenge to Wisconsin's NGI statute. And I think that's reflected in a lot of the answers. Wisconsin's what statute? Wisconsin's not guilty insanity. If you would use real words. I'm sorry. Wisconsin's not guilty insanity statute. And I think it's important that we remember what the standard of review is that we're actually applying here. And that is the standard under the AEDPA, which requires the Wisconsin courts to have acted contrary to or unreasonably applied, clearly established holdings from the Supreme Court of the United States in order to warrant relief. And I think there are two reasons that FAUCHA is simply not clearly established in this particular circumstance. And I think the first is because FAUCHA was dealing with a very, very different statute than the one that Wisconsin has as Justice O'Connor's concurrence recognized. And I think it's indicative of where Mr. Stowe has gone awry in this case that he never addresses the difference in language that the United States Supreme Court has used when it's talking about cases that impose limited term confinement with cases that impose indefinite term confinement. And that's really been the distinction. I don't think we should be talking about FAUCHA here. I think we should be talking about Salerno because the Wisconsin statute for committing a criminally insane person is much more related to the Bail Reform Act that was found constitutional in Salerno than anything that happened in FAUCHA. And the rest of the cases that Mr. Stowe is relying on were all indefinite confinement cases. And what the court has said in the case of limited duration confinement, we go back to the general due process standard. Is this reasonably related, is the nature and the duration of the confinement reasonably related to its purpose? And I think the Wisconsin Supreme Court in Randall, I think it makes very clear that they correctly parsed out that language from FAUCHA. They recognized where the differences were. And this is not just the Wisconsin Supreme Court going out of its way to find some other law that it could apply. The majority in FAUCHA did the exact same thing. And they compared the statute that was at issue in FAUCHA to the Bail Reform Act that was found constitutional in Salerno. And the very things that sets Wisconsin statute apart from the statute in FAUCHA are the same things that saved the constitutionality of the Bail Reform Act. It's got limited duration confinement. The state bears the burden of proving it's meeting its burden by clear and convincing evidence at these conditional release hearings. And the insanity equity is afforded a whole panoply of rights. They get counsel, they have the right to remain silent, they have the right to call witnesses, they have the right to testify, they have the right to appellate review. And the longest term of confinement that can be imposed on an insanity equity is the corresponding amount of time that they could have gotten for the crime had they been found guilty. And the court is free to set a lesser term than that. And if they do so, and the person reaches the end of their commitment term, if they're still completely insane and dangerous, Wisconsin has to let them out. That's it. We have to Chapter 51 them at that point. Their commitment is over. And if we would like to civilly detain them, we have to either proceed under our civil commitment statute or under Chapter 980, Wisconsin Sexually Violent Person Commitment Statute. And in that situation, yes, FAUSA would apply. And this court has said that FAUSA does apply to indefinite term confinement, of those two indefinite term confinement statutes. But that's just not what we have here. It's a very different set of circumstances. I also think that, as Judge St. Eve pointed out, in light of Justice Conner's concurrence, there's just simply no way that Wisconsin could have unreasonably applied this particular holding from the United States Supreme Court. Something's an unreasonable application of federal law, as this court knows, only if it is beyond any possibility for fair-minded disagreement that the court ran afoul of the United States Supreme Court. And looking at how all five in the majority parsed out Salerno from FAUSA, and then we have Justice O'Connor specifically, who's fifth in deciding votes, specifically going out of her way, to say, I wanna make clear that this case should not be read this broadly, which Mr. Stowe is doing. And then pointing out all the differences between more narrowly drawn schemes and listing Wisconsin's as one that wasn't necessarily invalidated by FAUSA. I simply don't think Mr. Stowe can meet his burden to say that the Wisconsin courts were unreasonably applying this in the case of our statute, which ticks every single box that the United States Supreme Court said in Salerno was required to meet due process in confinement cases. And even if Mr. Stowe's formulation is correct, I think the district court was still correct in recognizing that there are constitutional applications of Wisconsin's conditional release statute, even if Mr. Stowe is correct that this requires both mental illness and dangerousness. And just for an aside on that for a moment, I think we need to clarify what we're talking about when we say mental illness, because Mr. Stowe has repeatedly said in this case that he's no longer mentally ill, but he's never been willing to define what that means. And I think that's important, because under Wisconsin law, Mr. Stowe absolutely has been found to still be mentally ill. He has a series of personality disorders. Our statute simply says, for commitment, simply says that you have to have a mental disease or defect, it does not say mentally ill, whatever that means. And the United States Supreme Court in Hendricks made pretty clear that the term mental illness doesn't have any talismanic significance. And it said that Kansas committing people based on personality disorders or other type of mental defects was perfectly fine, and that legislatures and states have been free to use different kinds of terminology than perhaps the medical community does. And in Wisconsin, a person can be committed as not guilty by reason of insanity based on antisocial personality disorder, if that disorder caused them to not be able to appreciate the wrongfulness of their conduct. And that has been established in State versus Wehrlein, which is 136 Wisconsin 2nd 445. And they specifically said that medical diagnoses do not fit neatly within the nomenclature of the Diagnostic and Statistical Manual of Mental Disorders. And these conflicts are to be reconciled by the fact finder and not by using different terminology between mentally ill and personality disorder, it's just a mental defect. So Mr. Stowe has been found mentally ill. And as the district court noted, one of the things that the courts are encouraged to factor into whether someone's appropriate for conditional release or not, is their present mental condition. And courts are also very familiar with the standard for finding that someone is significantly likely to cause harm to self or others or property damage, because that's very, very close to the standard that we use for dangerousness in the sexually violent person commitment setting. And I can't conceive of what a finding that someone was perfectly mentally healthy, but was still dangerous would look like when we're talking about a conditional release petition. The subsection three of the statute, or subsection C, I'm sorry, of Wisconsin statute, when someone files one of these conditional, conditional release petitions, sorry about that, requires the circuit court to appoint examiners to examine the person's mental condition, who are then required to give a report to the court. And I have, just anecdotally, I have never seen a single one of these where the court did not consider the psychologist or psychiatrist's report on their mental condition before using that to find whether or not they were still dangerous to self or others, because their mental condition was causing that. So there are constitutional applications of the statute. And if there are no further questions, we ask you to affirm the decision of the district court. Thank you, Ms. Comfort. Anything further, Ms. Marion? I just wanted to start by checking to see if there were further questions about Justice O'Connor's concurrence, because I understand the court's position. I think when we're talking about the fixed duration of Wisconsin's NGI commitment, that I want to talk about the difference between nature and duration, because the Supreme Court has said that both the nature and the duration need to be constitutionally valid. And before we figure out whether the nature of the commitment is valid, we have to look at what is the purpose of an NGI commitment. The Supreme Court has said in Jones and Fauscia, it isn't to punish the person, they haven't been held responsible, because they were mentally ill. They cannot be, it can't be deterrence, because again, it's not a criminal case. The purpose of the NGI commitment is to treat the dangerous mental condition of the individual until they're no longer dangerous. And so that, in that sense, the duration being capped at some level really doesn't make much of a difference. It's not like the Bail Reform Act, where what we're talking about is a completely different purpose. It all has to come back to what is the purpose of an NGI commitment. Also wanted to point out, and I understand it's not an as-applied challenge, but the Circuit Court never made any finding about my client's current mental illness, that he has a personality disorder, that his personality disorder makes him dangerous. The judge didn't make any finding about that, because it wasn't required to. Wisconsin courts and statute are clear that that's just simply not a required part of a conditional release hearing. And the district court here did take its sort of own interpretation of Wisconsin statute to see, well, can we really interpret this to make that requirement there, since the judge may consider mental condition? Well, no, because no one in Wisconsin thinks that's what the statute says. And it's up to Wisconsin to define what its own statutory standard is. In the same, oh, thank you very much. Thank you, counsel. The case is taken under advisement, and the court.